UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MICHAEL COLTON | : | CIVIL ACTION NO. 2:10-cv-575 |
| VERSUS | : | JUDGE MINALDI |
| WARDEN, LOUISIANA STATE PENITENTIARY | : | MAGISTRATE JUDGE KAY |

REPORT AND RECOMMENDATION

Before the court is an application for writ of habeas corpus by Petitioner, Michael Colton. Petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. This matter has been referred to the undersigned in accordance with 28 U.S.C. § 636 and the standing orders of the court.

I.      Procedural History

Petitioner was convicted of one count of distribution of cocaine on August 22, 2006, in the Thirty-Sixth Judicial District Court in Beauregard Parish, Louisiana. The State filed a habitual offender bill on August 23, 2006. Petitioner was found guilty of being a fourth felony offender and was sentenced to life in prison on December 6, 2006.

Petitioner appealed his conviction and sentence to the Louisiana Third Circuit Court of Appeal on April 9, 2007. The appellate court affirmed in both respects on October 31, 2007. Petitioner then filed an application for writs with the Louisiana Supreme Court on November 30, 2007. The application was denied on April 25, 2007.

Petitioner filed an application for post-conviction relief on September 22, 2008. The application raised the same issues litigated on direct appeal and was denied on September 26,

2008.  Petitioner again sought review with the Third Circuit, but his writ application was denied on February 19, 2009.  Similarly, Petitioner sought writs with the Supreme Court, and his application was denied on January 29, 2009.

## II.     Legal Standard

Federal courts of the United States have jurisdiction to entertain applications for writs of habeas corpus on behalf of a person in State custody only if that person "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Because the appellate court adjudicated Petitioner's claims on the merits, this court reviews those decisions under the deferential standard of 28 U.S.C. § 2254(d).  *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998).

Where the state court has reached the merits of a constitutional claim, a "writ of habeas corpus . . . shall not be granted with respect" to that claim "unless the adjudication of the claim" resulted in a decision that was either (1) contrary to clearly established federal law or unreasonably applied that law, or (2) "based on an unreasonable determination of the facts in light of the evidence" before the state court.  28 U.S.C. § 2254(d).

Under the first standard, Petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling Supreme Court standard.  *Early v. Packer*, 537 U.S. 3, 9 (2002) (*per curiam*).  The decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

Under the second standard, it is insufficient that a Petitioner show that the state court erred; he must demonstrate that it was objectively unreasonable, which is a "substantially higher threshold."   *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).   "[A] state-court factual

determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010).  Rather, the Petitioner must show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable.  *Rice v. Collins*, 546 U.S. 333, 341 (2006).

When a prisoner attacks the factual findings of a state court on habeas review, the state court's "determination of a factual issue . . . [is] presumed to be correct.  The applicant [has] the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

The deferential standards of review elucidated above are applicable on habeas review even when the state court did not provide reasons for its decision, so long as the state court adjudicated the claim on the merits.  *Harrington*, 131 S. Ct. at 784, 785.  In the absence of reasons or a written opinion, "a habeas court must determine what arguments or theories . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior [Supreme Court] decision . . . ."  *Id.* at 786.

## III.     Claims for Relief

Petitioner advances two claims for relief in the instant application.  First, he claims that his counsel provided ineffective assistance.  Second, he claims that his life sentence is excessive.  Both arguments will be considered in turn.

### A.  Ineffective Assistance of Counsel

Petitioner asserts that he is actually innocent of the crimes for which he was convicted, and that his trial counsel provided ineffective assistance.  Doc. 1, p. 5.  In his application proper,

Petitioner argues that counsel was ineffective in at least five different respects.  These theories are as follows:

1.      "There was a conflict of interest between defense counsel and Petitioner."

2.      "Defense counsel failed to impeach the policeman that testified at trial to 'punish' Petitioner for not becoming his confidential informant."

3.      "Counsel failed to challenge the evidence. Petitioner was charged with selling to 'rocks' of cocaine, but 'powdered' cocaine was produced as evidence."

4.      "Counsel failed to challenge the video evidence used as being altered and/or that the 'seller' had his face blotted out in the video and/or failed to pursue a defense that a true copy, unaltered, would have proven that Petitioner was not the seller."

5.      "Counsel failed to challenge the police's lackadaisical effort to develop a case, and the untimeliness of prosecution."

Doc. 1, p. 5.

On direct appeal, Petitioner advanced the first theory of ineffective assistance—that his attorney had a conflict of interest.  He did not advance the second through fifth theories at that time.  The appellate court held that sole theory advanced did not entitle Petitioner to relief.  *State v. Colton*, 968 So.2d 1239, 1241 (La. App. 3 Cir. 2007).

In his application for post-conviction relief, Petitioner reurged the allegations that his counsel was conflicted and he also advanced the four additional claims of ineffective assistance that he raises in the instant application.  The state district court denied the motion without explanation.

Petitioner sought writs from the state appellate court, but the court considered the application to be repetitive.  Insofar as Petitioner had already advanced a claim of ineffective assistance of counsel on direct review, which was rejected, the court would not reconsider the

claim on post-conviction review.[1]   The court did not discuss the additional four claims of ineffective assistance, so it appears that the court believed that these additional claims were part and parcel of the conflict of interest claim advanced on direct review.

Petitioner's principal argument appears to be that counsel was ineffective because there was an unwaived conflict of interest; however, because Petitioner is proceeding *pro* se, we liberally interpret his application and the claims for relief raised therein.  In this regard, the four additional theories of ineffective assistance may present independent grounds for relief.  The state court only resolved the first claim on the merits so that claim is reviewed by this court in accordance with the deferential standards previously elucidated.  Because the second through fifth claims were not adjudicated on the merits, they are reviewed *de novo*.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Petitioner must demonstrate both (1) his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict.  *Id.* at 687.  This standard does not require perfect assistance by counsel; rather, Petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness.  *Id.* at 687–88.

### 1.  Conflict of Interest Claim

Where the defendant believes that his counsel suffered a conflict of interest, he must show that an actual conflict of interest adversely affected counsel's performance.  *Cuyler v.*

---

[1] Petitioner believes that because the state appellate court did not consider the argument on post-conviction review because it had already addressed the argument on direct review that it is procedurally defaulted before this court. However, the Fifth Circuit has held, "A state's refusal to listen to a habeas claim because it was decided on direct appeal does not impose a procedural bar to federal review of the constitutional issue. *Bennett v. Whitley*, 41 F.3d 1581, 1582 (5th Cir. 1994).  Thus, the procedural default doctrine is not applicable in this case.

*Sullivan*, 446 U.S. 335, 348 (1980).  "The mere possibility of a conflict, absent a showing that

the attorney actively represented conflicting interests, is not sufficient."  *U.S. v. Villarreal*, 324

F.3d 319, 327 (5th Cir. 2003) (citing *Cuyler*, 446 U.S. at 348).  "A defendant must identify

'some plausible defense strategy or tactic [that] might have been pursued but was not, because of

the conflict of interest.'"  *Id.* (quoting *Hernandez v. Johnson*, 108 F.3d 554, 560 (5th Cir. 1997).

This court looks to the last-reasoned decision on the issue when considering a claim for

relief on habeas review.  In Petitioner's case, the last-reasoned decision was from the state

appellate court on direct review.  It denied the claim for relief as follows:

> In his first assignment of error, Defendant alleges his trial counsel had a
> conflict of interest that prevented the effective representation of his interests and
> rights.  He claims his trial counsel, Charles A. "Sam" Jones III, prosecuted him
> for one of the prior offenses for which he was habitualized.  The State responded
> that Defendant, through his appellate counsel, is "arguing facts which are not in
> the record and/or which are simply not true."
>
> As the State points out, the transcript of Defendant's guilty plea on
> September 14, 1989 shows that trial counsel Jones was not involved in the plea,
> even though the minutes for that date show he was present.  It is well-settled that
> when the minutes and a transcript conflict, the transcript controls.  Thus,
> Defendant's assignment lacks factual support.

*State v. Colton*, 968 So.2d 1239, 1241 (La. App. 3 Cir. 2007).

The state appellate court did not discuss whether Petitioner would be entitled to relief if

he could demonstrate that a conflict of interest in fact existed.  Rather, the court made a factual

determination that Petitioner's counsel did not prosecute Petitioner on his 1989 conviction, and

consequently, did not have a conflict of interest.

Because the state appellate court's ruling was exclusively a factual determination, the

question on federal habeas review is whether the state court's "adjudication of the claim" was

"based on an unreasonable determination of the facts in light of the evidence."  28 U.S.C. §

2254(d).  The factual findings of the state court are presumed to be correct, and Petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Petitioner essentially advances three separate arguments in support of his position that Mr. Jones prosecuted him on a previous criminal conviction.  First, he argues that his defense counsel prosecuted his mother for distribution of cocaine in 1994.  He provides a copy of the court transcripts wherein Mr. Jones made an objection on the record.  Petitioner argues that Mr. Jones was obviously involved in his prosecution as well because he and his mother were arrested at the same time on identical charges.  Second, he argues that the facts of the current conviction were very similar to the previous conviction.  In both cases the arresting officer was Saul Wilson.  Petitioner believes that Mr. Jones is familiar with, and apparently approved of, Mr. Wilson's work.  Third, Petitioner makes a broader argument about the prosecutor's office in general.  He says, "[i]t is not essential that Mr. Jones be the 'lead' prosecutor in the case to be part of the 'prosecution team' that convicted this Petitioner in the earlier case."  Doc. 1, att. 2, p. 33.

No evidence was presented that clearly and convincingly rebuts the central holding of the state appellate court that Petitioner's counsel was not involved in his prior conviction.  The conviction of Petitioner's mother has no bearing on Petitioner's conviction.  Moreover, it completely reasonably, if not expected, that Mr. Wilson would be involved in multiple drug investigations and routinely called as a witness, especially in a small town with a limited narcotics squad.  And the fact that counsel was formerly a prosecutor does not automatically imply that his loyalty is divided.

Reviewing the evidence in a light most favorable to Petitioner, he is not entitled to relief.  The evidence, at most, shows that counsel was tangentially associated with the former prosecution of Petitioner insofar as he had some involvement in Petitioner's mother's case, was

familiar with a key witness, and was in the courtroom at the time.  This is a far cry from

conclusively establishing that counsel "actively represented conflicting interests."  *See U.S. v.*

*Villarreal*, 324 F.3d 319, 327 (5th Cir. 2003) (citing *Cuyler*, 446 U.S. at 348).  Counsel had not

worked for the District Attorney's office in many years and he had been laboring as a criminal

defense attorney ever since.  There is no evidence whatsoever that counsel's loyalties lay with

the opposing side. The Fifth Circuit has consistently rejected relief in similar situations.[2]

The state appellate court's findings of fact were not unreasonable in light of the record

presented.  Those findings of fact are presumed true, and Petitioner has not rebutted those

findings by clear and convincing evidence.  As such, this claim does not entitle Petitioner to

relief.

## 2.  Impeachment Claim

Petitioner argues that his counsel was ineffective failed to cross-examine Saul Wilson

about whether Petitioner was punished for not agreeing to become a confidential informant.

Saul Wilson is a narcotics detective with the Beauregard Sheriff's Office.  He testified to

a number of things at trial on direct examination by the State, including the chain of custody,

storage of evidence, as well as policy and procedures in the narcotics department.

Prior to cross-examining Mr. Wilson, counsel for Petitioner informed the court that he

wished to go on record, outside the presence of the jury, to notify the court that he advised his

---

[2] *See e.g. U.S. v. Fields*, 483 F.3d 313, 351–52 (5th Cir. 2007) (rejecting a conflict of interest claim where counsel was employed as a prosecutor fifteen years earlier; counsel had summarily signed off on a request to initiate delinquency proceedings against defendant); *U.S. v. Villarreal*, 324 F.3d 319, 327 (5th Cir. 2003) (defense counsel's employment in the district attorney's office at time of defendant's prior conviction did not constitute a conflict of interest); *Hernandez v. Johnson*, 108 F.3d 554, 558–61 (5th Cir. 1997) (rejecting the argument that counsel suffered a conflict of interest because he previously served as the district attorney when some of the defendant's prior convictions were obtained; counsel had also filed a motion requesting psychiatric evaluation of defendant, signed a motion to dismiss a related indictment after defendant pled guilty, and approved of defendant's plea bargain).

client against pursuing a line of questioning that he believed to be counterproductive.  Counsel

noted the following:

> Your Honor, my client, Mr. Colton, has repeatedly asked that I question Mr. Wilson on the following.  Specifically, he wants me to question Mr. Wilson on whether or not Mr. Wilson previously asked Mr. Colton to work with or cooperate with the narcotics task force, providing information on drug activity in Beauregard Parish.  As to that question – There is an additional one.  But as to that question, Your Honor, I've tried to advise my client, Mr. Colton, that if I ask that question, it may very well open the door to the State to inquire of Mr. Wilson what kind of individuals he approaches to provide information to the narcotics task force; and it could open the door for the State to show that Mr. Colton was, in fact, known to have been dealing in crack cocaine or possessing rock cocaine.  And I do not – I've advised against it, but he wants me to proceed and ask that question anyway.  I simply wanted to go on the record to state that I advised my client against having me question Mr. Wilson concerning that point or issue.

Doc. 11, att. 1, pp. 122–23.  The court confirmed with Mr. Colton that counsel had accurately

articulated his position but then the judge directed that Mr. Colton and his counsel convene in the

back of the courtroom to discuss how to proceed.  After a short recess, Mr. Colton indicated that

he had changed his mind and he no longer wished for his attorney to pursue that line of

questioning.  Doc. 11, att. 1, p. 125.

This claim plainly does not entitle Petitioner to relief and the reasons are self-evident.

Counsel made a strategic decision not to pursue a certain line of questioning; Petitioner agreed

with that decision; and this court will not second-guess that choice.  Petitioner fails to satisfy

either the deficiency or prejudice standard of *Strickland*.

### 3.  Rock v. Powder Claim

Petitioner argues that his counsel was ineffective because he failed to object to the

introduction of powdered cocaine when Petitioner was charged with distribution of crack (rock)

cocaine.  Plaintiff maintains that if the subject cocaine was powder at trial, so it must have been

powder at the time the crime was committed.

Detective Marie Manuel, who was the undercover buyer, testified at trial and authenticated the cocaine she purchased when it was introduced into evidence.  She noted, "It looks like it's cocaine that was actually kind of broken up.  It's not two rocks any more.  It's smashed up."  Doc. 11, att. 1, p. 90.  Moreover, several other witnesses, including Saul Wilson and Detective Craig Richard, testified that the cocaine was in rock form.  And lastly, Jody Touchet, a forensic analyst with the crime lab, testified that she performed tests and analysis on the rocks and that it was positive for cocaine.  Doc. 11, att. 1, pp. 148–49.

Counsel for Petitioner pursued two lines of questioning that are relevant here.  First, counsel for Petitioner cross-examined Ms. Touchet on whether the equipment she used to test the substance could distinguish between crack and powder cocaine.  She admitted that the gas chromatography machine could not but that the differentiation could be made with a spot test.  Doc. 11, att. 1, pp. 155–56.  Second, there was confusion at trial was whether Detective Manuel purchased one or two rocks.  The defense called Detective James Halbert to testify.  Mr. Halbert was a narcotics investigator with the DeRidder City Police Department.  Mr. Halbert testified that he signed the sworn affidavit for Petitioner's arrest and averred therein that Petitioner sold one white rock of cocaine. However, he also testified that he was mistaken in the affidavit when he indicated that there was only rock rather than two.  He said that the $20 purchase price is consistent with the street value of a single rock.  Doc. 11, att. 1, p. 162–63.

There is no evidence in the record to indicate that powder cocaine was introduced at trial. Every witness testified that the cocaine was in rock form.  Moreover, counsel pursued two lines of questioning regarding the quantity and quality of the cocaine.  The undersigned has no basis to conclude that counsel's performance was deficient in this regard.  As such, this claim does not entitle Petitioner to relief.

### 4.  Video Challenge Claim

Petitioner argues that the original video was not admitted into evidence at trial.  He says that the prosecution used a doctored version that blurred out the face of the person making the drug sale and that the unaltered version would show that someone other than Petitioner is responsible.

Counsel for Petitioner objected when the video was admitted because the audio was missing.  The prosecutor responded that the audio function of the camera was not working at the time.  The trial judge ruled that the video was admissible because the video was the original and had not been edited to remove the audio.  Doc. 11, att. 1, p. 96

Petitioner avers that while counsel objected to the lack of audio, he should have also objected to the blurred out face.  However, he has not presented any evidence to this court, nor is there any evidence in the record, to support his claim that the original video was altered to blur faces.  The trial court concluded the video introduced had not been altered.  If faces had been blurred in that video the trial court certainly would have said as much.

Petitioner also says that his attorney admitted that there was an original video in a letter penned to Petitioner.  However, the letter does not say that the faces on the video were blurred out.  Counsel says that he confirmed that there was an original of the video, but the original

-11-

contained multiple transactions from multiple sellers over a period of time.  The prosecutor only provided counsel with the relevant portion from the transaction with Petitioner.  *See* Appendix F-11 of Manual Attachment, p. 209.

Petitioner has not satisfied the first element of *Strickland*.  There is no evidence in the record or presented by Petitioner to indicate that his face was blurred out.  Accordingly, there is no basis for this court to conclude that counsel's failure to object was unreasonable because there was no basis for an objection.  As such, this claim does not present a basis for relief.

### 5.   Timeliness of Prosecution Claim

Petitioner also argues that his counsel provided ineffective assistance as counsel "failed to challenge the police's lackadaisical effort to develop a case, and the untimeliness of prosecution . . . ."  Doc. 1, att. 2, p. 35.  He submits that because the crime occurred in August 2005 but that he was not arrested until February 2006 because of ongoing undercover operation, "the delay in arrest and single sale lends credibility to Petitioner's claim that the police were trying to convince him to become an informant."  Doc. 1, att. 2, p. 36.

The court has already concluded that Petitioner's counsel made a strategic decision in not pursuing the line of questioning about the government's alleged attempt to solicit his service as an informant.  The court has already found that information in the record indicates Petitioner ultimately agreed with that decision.  To the extent this aspect of Petitioner's claim attempts to again address this issue the result is the same, i.e. Petitioner has no claim.

This claim, however, also questions the delay in prosecution but then provides the explanation.  The delay in prosecution was necessitated by the ongoing undercover operation.  It was certainly within the purview of Petitioner's counsel not to object or otherwise raise this as an issue.  Any objection would surely have certainly been overruled, and counsel may have believed

that cross-examining the investigating officers on this point would have only damaged Petitioner's defense.

Again, Petitioner fails to demonstrate that his counsel's performance was deficient under *Strickland*.  Even in the event counsel's performance was deficient in this regard, he has not made a showing of prejudice.  This argument does not provide a basis for relief.

**B.  Excessive Sentence Claim**

Petitioner claims that his sentence to life in prison without the possibility of parole is excessive in violation of the Eighth Amendment to the United States Constitution.  He presented this claim in state court both on direct appeal and in his application for post-conviction relief.

The state district court did not provide a reasoned judgment on post-conviction review; accordingly this court must utilize the "look-through doctrine" and look to the reasoning of the state appellate court when it addressed the issue on direct appeal.

Because the state appellate court resolved the issue of excessiveness of sentence on the merits, the question on federal habeas review is whether the state decision is contrary to or unreasonably applied clearly established federal law, as interpreted by the Supreme Court.  Thus, as a threshold matter, this court must "decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).  While the Court has considered whether a sentence is constitutionally excessive on many occasions, "the only relevant clearly established law amendable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle."  *Id.* at 72–73.  Thus, the limited inquiry herein becomes whether the state court's decision was contrary to or unreasonably applied the "gross disproportionality" principle.

The "gross disproportionality" principle is "applicable only in the 'exceedingly rare' and 'extreme' case," *Id.* at 73 (citing *Harmelin v.* Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)), and it "does not require strict proportionality between crime and sentence." *Ewing v. California*, 538 U.S. 11, 24–25 (2003) (plurality opinion).  Several factors may be considered, including the "gravity of the offence compared to the harshness of the penalty," *Id.* at 28, the criminal history of the defendant, *Id.* at 29–30, and the "traditional deference to legislative policy choices." *Id.* at 25.  Where a Petitioner who has been sentenced under a habitual offender statute seeks habeas review, a federal court must consider "the seriousness of the most recent offense, not as it stands alone, but in light of his prior offenses." *McGruder v. Puckett*, 954, F.2d 313, 316 (5th Cir. 1992)).

The state appellate court did not cite a federal case; nevertheless it recognized that a sentence may be unconstitutional when it is "grossly out of proportion to the severity of the crime." *State v. Colton*, 968 So.2d 1239, 1242 (quoting *State v. Dorthey*, 623 So.2d 1276, 1281 (La. 1993)).  The court then discussed many of the major elements of the appropriate analysis.  First, the state court showed deference to legislative policy choices, noting that habitual offender statutes serve the salutary purpose of deterring and punishing recidivism.  *Id.* at 1243 (quoting *State v. Johnson*, 709 So.2d 672 (La. 1998)).  Second, the court recognized that Petitioner was not sentenced to life imprisonment merely because he sold a small amount of crack cocaine.  This was Petitioner's fourth felony conviction—the third for distributing crack cocaine.  *Id.*  Third, the state appellate court took Petitioner's entire criminal history, quoting the sentencing judge at length:

> The [pre-sentence investigation report] reflects that in addition to the four felony convictions described above, you also committed and were convicted of numerous misdemeanors, including simple battery, disturbing the peace, possession drug paraphernalia, criminal neglect of family, theft of goods and

resisting an officer.  You are now 40 years of age; and for no substantial period during your adult life have you not been either incarcerated, on parole or on probation.  In short, you have lived a life of crime.

*Id.* at 1243–44.

As previously discussed, the gross disproportionality principle applies in only the narrowest of circumstances.  Consequently, the undersigned cannot conclude that the state appellate court's decision was contrary to or unreasonably applied the gross disproportionality principle as elucidated by the United State Supreme Court.  This claim does not provide a basis for relief.

## IV.    Recommendation

For the reasons discussed herein, IT IS RECOMMENDED that the instant application be DENIED and DISMISSED WITH PREJUDICE.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court.  Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days

from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 20th day of August, 2013.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE